And this is Auriga Polymers v. PMCM2. And Mr. Brockman, Ronald Brockman, is here for the appellate. And Mr. Levin, Matthew Levin, is here for the appellee. Mr. Brockman, you may begin. Thank you, Your Honor, and may it please the Court. Ronald Brockman, with Shoemaker, Lupin, Kendrick, on behalf of the appellant, Auriga Polymers, in this proceeding. Your Honors, this case involves an important question of interpretation under the Bankruptcy Code. Under Section 547, the trustee may avoid certain preferential transfers made by a debtor to a creditor in the 90 days before its bankruptcy petition was filed. A creditor who gave the debtor new value subsequent to a preference payment may use what's referred to as the subsequent new value defense to offset an otherwise avoidable preference. But the new value defense is not applicable to the extent that the debtor made an otherwise unavoidable transfer to the creditor on account of the value received. And the specific issue in this case is whether a reservation of funds to pay a Section 503b9 priority claim for goods delivered within 20 days of the bankruptcy filing qualifies as an otherwise unavoidable transfer made by the debtor within the meaning of 547c4b, and as a result, reduces Auriga's otherwise complete subsequent new value defense for every dollar of new value that's entitled to 503b9 priority treatment. We're asking this Court to reverse the Bankruptcy Court's order and hold that post-petition reservation of funds for Auriga's 503b9 claim doesn't alter Auriga's complete subsequent new value defense. Because a reading of the statute that fixes the subsequent new value analysis as of the petition date is the only interpretation that's consistent with the text, the legislative history, and the policies behind the subsequent new value defense. The facts in this case, Your Honors, are very simple. Auriga supplied the debtor with goods that the debtor needed to manufacture its flooring products, and it supplied those goods on unsecured credit. During the preference period, Auriga gave significantly more than it received. While the debtor paid Auriga $2.26 million, Auriga was still owed almost $4.3 million as of the petition date. Now, close to $700,000 of that $4.3 represented goods that the debtor received within the 20 days before the bankruptcy filing, entitling Auriga to a 503b9 priority claim for the $700,000 and a general unsecured claim for the remaining $3.6 million. It is undisputed that at the time the debtor filed for bankruptcy, Auriga had a complete subsequent new value defense. Fast forward two years from the bankruptcy filing, and the liquidating trustee commenced this underlying case against Auriga to avoid the $2.26 million paid during the preference period. Now, whether Auriga's complete subsequent new value defense is reduced by $395,000 in subsequent new value that also qualifies for this 503b9 priority treatment turns on the meaning of Section 547c4b. And so we begin, as we must, by considering the language itself, the specific context in which the language is used, and the broader context of the statute as a whole. Is there any language in 547c4 that limits transfer to before the petition date, any language in the statute at all? Your Honor, if you just look at otherwise unavoidable transfer in isolation, those three words don't have temporal limitations. But if you read 547c4 in its context, then yes, we believe it does limit the otherwise unavoidable transfer only to pre-petition transfers. And an example of that is the language that Congress used under subsection c4b, when it wrote that the otherwise unavoidable transfer has to be one that the debtor did not expressly with what a trustee may avoid post-petition or may not avoid post-petition. They don't deal with what a debtor may avoid. And there's a difference between the debtor and the trustee, even the definition of new value itself refers to the debtor or the trustee. And so in that context, if you look at 547c4b, then yes, when it says an otherwise unavoidable transfer that the debtor did not make, it is referring to the pre-petition period. But more importantly, Your Honor. May I ask a question? I'm not sure if it is relevant or not, but the language otherwise unavoidable transfer, are there any, can you think of or an example of anything that would be an otherwise unavoidable transfer pre-petition? Yes, Your Honor. And I think at least as a starting point, the 11th circuit's decision in BFW liquidation is instructive on exactly what otherwise unavoidable transfer means. And in that case, the 11th circuit looked at the language and considered it in context, recognizing that in addition to the subsequent new value defense, 547c includes a number of other defenses which prevent a trustee from avoiding an otherwise preferential transfer. For example, 547c2 prevents transfers that are made from being avoided if the transfer is made in the way that would be a payment for goods in the ordinary course of business would be otherwise avoidable. In other words, unavoidable for reasons other than the subsequent new value defense. And Your Honors, when we look at the section in its context, an important question to ask, which the 3rd circuit asked in the Freedman's decision is where does it end? And when the 3rd circuit carefully considered this language in its context, the 3rd circuit held, and I quote, we hold that we're an otherwise unavoidable transfer made after the petition date, what is made after the petition date does not affect the new value defense. Well, you would have a stronger argument if we were in the 3rd circuit, but we're in the 11th circuit. And it seems to me that we're bound by our reasoning in BFW litigation, where we concluded that nothing in the statute limits otherwise unavoidable transfer or transfers before the petition date. So we should not interpret the statute to include such a limitation. Shouldn't we follow 11th circuit law or reasoning rather than 3rd circuit reason? Well, Your Honor, I think you have to follow BFW liquidation. But BFW liquidation doesn't address the issue that's before the court in this case. BFW liquidation dealt with whether subsequent new value must remain unpaid. And the court, looking at the specific language held that certainly it does not, because it only needs to remain unpaid if it's paid with an otherwise unavoidable transfer. So in BFW liquidation, the court didn't. The bankruptcy court took treatment into consideration and rejected its reasoning. Is that right? That's correct, Your Honor. I think in order to affirm the bankruptcy court, you really have to reject the 3rd circuit's reasoning in Freedman's. And that's why the liquidating trustee urges, as it must in its briefs, that this court not follow Freedman's. But we think Freedman's, which unlike BFW, deals directly with the issue that's before the court in this case, which is whether a post-petition transfer can amount to an otherwise unavoidable transfer made by the debtor, is highly instructive. Although, as you note, Your Honor, not binding on the 11th circuit. How do you respond to the argument that you take a look at the changes in the statute over the years, including that Congress removed the term, quote, remaining unpaid from the statute for a new value defense. And it also removed the language at the time of the adjudication in bankruptcy. Remove those words from the statute. I think there's a significant distinction to be made here, Your Honor. When 547C4B removed the term remains unpaid, it replaced it with an expressly different requirement. The new value can be paid as long as it's not paid with an otherwise unavoidable transfer. Removing as of the date of adjudication in bankruptcy language that modified the remains unpaid term in the previous version of the Bankruptcy Act has not been replaced with an expressly different requirement, Your Honor. There's nothing, nothing more than at most silence with respect to the temporal limit when it comes to when the otherwise unavoidable transfer can be made. And for that reason, the courts must look, as the Third Circuit did, to the specific language in its context. And there are a number of factors that influence the Third Circuit's decision that, frankly, neither the bankruptcy court beneath us nor the liquidating trustee has been able to overcome convincingly. And it's important to keep in mind, Your Honors, as the unanimous in finding that a creditor's extension of post-petition subsequent new value doesn't count. It doesn't count in the analysis. And it makes no sense to find a temporal cutoff of the petition date for subsequent new value given to the debtor, but then find no temporal cutoff for an otherwise unavoidable transfer paid by the debtor. And just to quote the N. Statutory consistency, the trustee's argument fails. And unless there are further questions, I'd like to reserve the rest of my time for rebuttal. All right. Thank you, Mr. Brockman. We'll hear from Mr. Levin. Thank you, Your Honors. May it please the court, Matthew Levin, on behalf of the appellee in this case, the liquidating trustee of the BOU Liquidating Trust. Your Honors, we believe that this case... Mr. Levin, I think you've shut off your camera. Oops. Oh, I apologize. Am I back? Yes. Yes. Apologize. Technology will get me every time. As long as you don't have a cat filter on, we're fine. Yeah. That was a bad one. Your Honors, we believe that the issue in this case can be resolved, as Judge Wilson seemed to indicate, by a fairly straightforward application of this decision three years ago in BFW liquidation. In the BFW case, this court construed the same language of the same statute that is at issue in this case, Section 547C4, and found a number of things. First, that the language of the statute was clear and unambiguous, that the silence in the relevant language compelled the result. That is, in other words, nothing in the language of in that case. That when the plain language of the statute is unambiguous as it was, as this court has found, that the court need not and indeed should not look to legislative history or predecessor statutes to vary that conclusion. And finally, the court found that in any event, 547C4 was such a complete and radical departure from the predecessor statute, Section 60C under the Bankruptcy Act, that the changes in the language of the former statute actually confirmed that the court's construction of the 547C4 defense was correct. And the quote from the court on page 1189 of the BFW opinion confirms all of this. It says, nothing in the language of 547C4 indicates that an offset to a creditor's 547B preference liability is available only for new value that remains unpaid. Instead, the plain language of the statute requires only one, that any new value given by the creditor must not be secured by an otherwise unavoidable security interest. And that, as an aside, is not relevant here, obviously. And two, the court continued, the debtor must not have made an otherwise unavoidable transfer to or for the benefit of the creditor on account of such new value given. By its plain terms, the court said, this statute only excludes paid new value that is paid for with an otherwise unavoidable transfer. Here's the key part. Therefore, so long as the transfer that pays for the new value is itself avoidable, the transfer is not a barrier to the assertion of 547C4's defense. But the court did not say, the 11th Circuit in BFW liquidation, the court did not say that so long as the transfer that pays for the new value is itself unavoidable, and it did not add the words, and was made prior to the petition date, that the defense would be unavailable. So then the court really, I think, in this case, just has to ask itself this question, is the transfer that the debtor made for the benefit of Auriga, and that's the transfer to the liquidating trust of the assets sufficient to pay the Auriga 503D9 claim, was that transfer otherwise unavoidable? And that is, is the transfer avoidable, as Judge Lagoa put it, is the transfer unavoidable for a reason other than Section 547C4? And the answer is, of course it is, because as the bankruptcy court recognized in its decision below, following the bankruptcy court from the Eastern District of Virginia's decision in the First Circuit City case cited in our brief, that's the adversary against Mitsubishi, the transfer was unavoidable by reason of Section 549 of the Bankruptcy Code. 549 of the Bankruptcy Code makes a post-petition transfer unavoidable if it is authorized by the court or by the Bankruptcy Code. And in this particular instance, payment of a 503D9 claim, and specifically Auriga's, or transfer on account of Auriga's 503D9 claim, was authorized both by the Bankruptcy Code, specifically Section 503D9 and Section 1123 of the Bankruptcy Code, because it involved the confirmation of a Chapter 11 plan, which requires the payment of all, or the satisfaction or provision for, all administrative claims that have been allowed in the case. And so it was authorized by the Bankruptcy Code, and it was authorized by the Bankruptcy Court when the court signed the confirmation order confirming the plan of reorganization, or the plan of liquidation that was confirmed in this case. And so the transfer on account of Auriga's 503D9 claim was unavoidable under Section 549 of the Bankruptcy Code. Can I ask you a question, Mr. Levine? I guess my concern about BF liquidation is, Judge Black, when she wrote that, there was really no analysis on the requirement of 547C4B's requirement that debtor not have made the otherwise unavoidable transfer, correct? I mean, that's not necessarily an analysis that was conducted in that case. In which case, Your Honor? In BFW liquidation. No, BFW liquidation, you mean the 11th Circuit's opinion? Yes. The 11th Circuit's opinion, Judge Carnes wrote the opinion of BFW liquidation. You're right, Julie Carnes wrote it, I'm sorry, I apologize. And I think she engaged, I think the court engaged in a fairly extensive analysis to come to the conclusion as to what the phrase otherwise unavoidable transfer meant in the context of 547C4B. And indeed, the 11th Circuit had to reject, well, the 11th Circuit had to find that its prior decision in Jet Fortis Systems, which seemed to indicate that new value had to the 547C4 defense. The court rejected that or said that it could disregard that statement as pure dicta, and then proceeded to a sort of bottom-up analysis, if you will, of the statute. It looked back at the prior act, the Section 60C under the Bankruptcy Act of 1898. It looked at legislative history, it looked at other court decisions interpreting the otherwise unavoidable language, and based on its fairly extensive analysis, came to the conclusion that otherwise unavoidable meant what the court said in BFW liquidation is that otherwise unavoidable means a transfer that is unavoidable for a reason other than Section 547C4. And this court also, in the BFW case, just to follow on to that point, this court recognized in BFW that a trustee or debtor in possession in this case has other avoidance powers besides those described in Section 547 and 548. And this appears at page 1197, footnote 17 of that decision. The court said, for example, a trustee may also avoid certain post-petition transfer and set-offs under Sections 549 and 553B1, respectively. So the court recognized that the trustee and debtor in possession in a Chapter 11 case had avoidance powers apart from Section 547. There are avoidance powers under 548, there are avoidance powers under 544, and for purposes of this particular case, 549, which would allow the avoidance of an unauthorized post-petition transfer. And in doing so, or in relying on or coming to the decision that it came to in BFW, the court noted that there was a split of authority on this otherwise unavoidable transfer language. The court noted that several circuits had held, as the 11th Circuit ultimately held in BFW liquidation, that otherwise unavoidable meant a transfer unavoidable for a reason other than 547C4. And it joined with the 9th Circuit, the 8th Circuit, the 4th Circuit in holding that that is what the language meant. It noted, interestingly, that the 3rd Circuit, which is the court that issued the Freedman's decision, the 3rd Circuit goes the other way. The 3rd Circuit remains unpaid circuit. So the 11th Circuit already parted ways, if you will, with the 3rd Circuit in regards to the proper interpretation of the 547C4 defense. There's no reason that this court should join back up with the 3rd Circuit, if you will, when it already rejected its reasoning in another case. And I would note also that in reliance or in coming to its decision, the court also relied on the 4th Circuit's decision in Hall v. Chrysler Credit Corp., which is a 4th Circuit decision at 2005, which also addressed the 547C4 defense and found that otherwise unavoidable meant unavoidable for reasons other than 547C4. And the 4th Circuit also held in that very same case that post-petition transfers may be considered under 547C4B. And that appears at page 553 of that decision and footnote 6, relying on a prior decision of an Illinois bankruptcy court from 2003. And so in other words, the 11th Circuit in issuing the BFW decision took or sided with, if you will, the 4th Circuit's decision in Hall, which specifically recognized that post-petition transfers could be the type of transfer that might apply as otherwise unavoidable under 547C4B and rejected the 3rd Circuit's approach in general with regard to the interpretation of that defense. So there was a comment made in the reply brief filed by Mr. Brushman that the court should not, and I think this was actually raised by Judge Wilson in one of the prior cases, the court should not run around creating circuit splits. And that's certainly true, but there already is a circuit split. There was a circuit split. The 4th Circuit was the first circuit, as far as I could tell, that ruled on this issue. And then the 3rd Circuit went a different way than the 4th Circuit. And in fact, the Freedman's decision doesn't even cite the Hall decision. It ignores it entirely. So the 3rd Circuit was the one that sort of jumped the shark on that one. And the 11th Circuit would simply be siding with a sister circuit that it has already sided with in a case it issued not three years ago. So under these circumstances, we think the court's decision in BFW really controls here. And we think the logical implication of the court's decision in that case is that there's nothing in the statute that requires the transfer, the otherwise unavoidable transfer to have occurred pre-petition. And all of the... Can we go back to the BFW liquidation? Because the holding there in that case, really it just says we hold that Section 547C4 does not require new value to remain unpaid, right? That's the explicit holding in that case. And I guess the question here is, can you do a pre-petition or post-petition? That's really the issue here. That's correct, Your Honor. The BFW liquidation, all of the transfers at issue in that case were pre-petition. So the 11th Circuit was not dealing with the situation expressly here, which is a post-petition transfer on account of an administrative claim. And let's be clear about... I guess that's my question. The issue here is that BFW liquidation doesn't really answer the question here. It starts it, but it doesn't end it. Strictly correct, Your Honor. The BFW liquidation case doesn't address the precise issue here, although I think the logic of that decision carries forward here. Because what the 11th Circuit said is that all 547C4 requires is that the new value not be paid with an otherwise unavoidable transfer. It didn't exclude or include in that decision post-petition transfers. So as I was starting to say, the key thing to keep in mind here is that as Mr. Bruckman said, at the time of the bankruptcy petition being filed, Auriga had a complete new value defense. And then Auriga took an action after the bankruptcy case was filed, and Auriga took an action in filing a 503B9 claim and therefore placing a portion of its otherwise totally unsecured claim and making that by claim or really technically an administrative expense under the lingo of the bankruptcy code. So it's ironic that the Auriga position is that nothing that happens post-petition can affect a preference case, when in fact it was Auriga's own actions in filing a 503B9 claim that initiated this entire dispute. And indeed, the bankruptcy code has numerous examples or at least several examples of actions that can affect, post-petition actions that can affect a preference case. For example, if a debtor post-petition were to assume an executory contract, section 365 of the code requires the debtor to cure all pre-petition defaults under that contract. And further, courts have held, most courts have held, that when a debtor assumes an executory contract post-petition, it wipes out any ability to then sue that same creditor for a preference. 547C3 in other of the C defenses allows a creditor to secure up a lien in assets, therefore avoiding a preferential attack, and that can occur post-petition, up to 30 days post-petition. I see that my time is up. I thank the court for your time, and unless the court has any further questions, I will shut up. Thank you, Mr. Levin. Mr. Bruckman, you have reserved some time for rebuttal. May it please the court. Your honors, I'd like to pick up on Judge Lagoa's statement that BFW liquidation starts the analysis, but it doesn't finish it, and that's absolutely right. The only circuit court decision that finishes it is the Freedman's decision, and the Freedman's decision, unlike the TI acquisition line of cases that the liquidation trustee relies on, is the only decision that engages in this careful contextual analysis. It goes beyond an isolated view of simply the term otherwise unavoidable transfer, and concludes, as it must, that the only logical outcome and treatment of the subsequently valued defense is to have it fixed as of the petition date. Arega, in this case, in addition to its 503B9 administrative priority claim, has a general unsecured claim, and that claim has been receiving payments post petition as well, but there's no suggestion that the payments on its general unsecured claim somehow amount to an otherwise unavoidable transfer that the debtor has made. And the other contextual factors that the Freedman's court touched upon, including the statute of limitation that starts to run as of the petition date, all support a the preference and subsequent new value analysis of preferential transfers is fixed as of the petition date. Your Honors, the bankruptcy court acknowledged that the legislative history doesn't support its position. The policies behind the subsequent new value defense of encouraging creditors like Arega, who backed a debtor to the hilt in its most desperate times before bankruptcy was filed, is not supported by the liquidating trustee's position. If the liquidating trustee's position is affirmed, then the shot in the arm that Congress gave trade creditors shipping goods to customers through 503B9 will turn into a kick in the teeth, because the result here is that the code will have no impact whatsoever. It's as if it will be as if Arega only has a general unsecured claim. There's nothing inequitable about Arega availing itself of its rights under the bankruptcy code. What about the code's fundamental goal of equality of distribution? Is that the undercut argument? Your Honors, the Friedman's decision touches on this very nicely as well. The policy interest is equality of distribution among creditors in the same class, and 503B9 specifically gives Arega a portion of its claim that's treated in an elevated class with priority treatment. I'll just conclude, Your Honors, by noting that there's no compelling argument that's been made here or in the briefs for this court to go against the Third Circuit's reasoning in Friedman's, which is directly applicable to this case. As the court's Third Circuit noted in its footnote two, the wage order in that case is analogous to the 503B9 payment in this case. Judge Wilson, may I ask one more question? Yes, of course. Mr. Bruckman, can you distinguish for us the BFW liquidation case? The BFW liquidation case, as you noted, Your Honor, is limited to whether subsequent new value must remain unpaid. It didn't touch on the timing of when the debtor makes this otherwise unavoidable transfer, and so while it's a helpful starting point, it doesn't answer the question like Friedman's does. Thank you. Thank you, Mr. Bruckman and Mr. Levin. Thank you, Your Honor.